**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.** 1:26-MJ-3123-LETT

FILED BY JP D.C.
Jun 24, 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

**IN RE COMPLAINT**

______________________________/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

5. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: */s/ Monique Botero*

MONIQUE BOTERO
Assistant United States Attorney
Florida Bar No. 722286
U.S. Attorney's Office – SDFL
99 N.E. 4th Street
Miami, FL 33132
Tel: 305-961-9010
Email: Monique.Botero@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.

NICHOLAS AGUILAR and
JESSICA MARCOLINA,

*Defendant(s)*

Case No. 1:26-MJ-3123-LETT

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 15, 2020-June 24, 2026 in the county of Miami-Dade and Broward in the Southern District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to distribute controlled substances |
| 18 U.S.C. § 1956 | Conspiracy to commit money laundering |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Badge #7982

Special Agent Stephan George, IRS
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Telephone

Date: June 24, 2026

Enjoliqué A. Lett
*Judge's signature*

City and state: Miami, Florida

HON. ENJOLIQUÉ A. LETT, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Stephan George, being duly sworn, declare and state as follows:

## INTRODUCTION

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I am further authorized to execute and serve search warrants under Title 21, United States Code, Section 878.

2. I am a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS-CI"), United States Department of the Treasury. As such, I am an investigative and law enforcement officer of the United States empowered by law to conduct investigations of, and to make arrests for, certain federal criminal violations including, in part, violations of federal tax laws, money laundering statutes, and other related offenses.

3. I have been employed as an IRS-CI Special Agent since 2017, and I am currently assigned to the IRS-CI Washington DC Cyber Crimes Unit. During my employment, I have received specialized training in tracing transfers of value through the use of cryptocurrency and digital assets, and gained significant experience in conducting federal criminal tax and money laundering investigations. I have served as an expert witness in federal court, specifically in the Southern District of New York, where I testified on matters pertaining to virtual currency and blockchain tracing. I am a Task Force Agent, assigned to the DEA Miami Field Division Counternarcotic Cyber Investigations Task Force. As such, I have participated in all aspects of drug investigations, including physical surveillance, electronic surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the affecting of arrests, and debriefings of

defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have reviewed recorded conversations and telephone, financial, and drug records. I am a Certified Public Accountant in the State of Florida.

4. Through my training and experience, I have familiarized myself with the methods employed by drug traffickers in general to smuggle, safeguard, and distribute drugs, and to collect and launder drug-related proceeds. These methods, which are made in an attempt to avoid detections by law enforcement and to circumvent drug trafficking investigations, include the use of coded or vague communications, cellular telephones, computers, false or fictitious identities, counter-surveillance, and sophisticated schemes tied to legitimate businesses, to name a few.

5. I submit this affidavit for the limited purpose of establishing probable cause that on or about September 15, 2020, through on or about June 24, 2026, Nicholas AGUILAR (hereinafter, "AGUILAR"), and Jessica MARCOLINA (hereinafter, "MARCOLINA") did knowingly and willfully conspire to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, and conspired to use proceeds from this unlawful activity to conduct transactions that were designed to conceal the source and ownership of the funds, in violation of Title 18, United States Code, Section 1956.

6. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not contain all of the information known to me or other law enforcement officers involved in this investigation. The facts and information contained in this affidavit are based on my personal knowledge and observations, as well as information received in my official capacity from other individuals, including other law enforcement officers involved in this investigation, as well as my review of records, documents, and other physical items obtained during the course of this investigation.

## PROBABLE CAUSE

**A. "HotGirlzClub" operates as a vendor for narcotics on dark net marketplaces**

7. In or around January 2025, law enforcement began an investigation on the dark web into an individual utilizing the moniker "HotGirlzClub" to sell various types of narcotics on a variety of online marketplaces. These marketplaces facilitate the anonymous sale of illegal items, such as controlled substances, in exchange for bitcoin and other peer-to-peer cryptocurrencies. Through my training and experience, it is common for vendors to establish accounts on multiple markets to promote the sale of illicit goods and services to a larger customer base.

**B. In October 2025: Distribution of approximately 7 grams of fentanyl**

8. On October 22, 2025, undercover investigators in Miami accessed the darknet marketplace known as DrugHub. Investigators found the vendor HotGirlzClub, who advertised multiple drug listings for sale. Among these listings was a purported heroin product marketed as "Sweet Mama's China White Synthetic Potent AF". Investigators made an undercover purchase of approximately 6.2 grams of heroin from HotGirlzClub.

9. On November 3, 2025, investigators retrieved the parcel from the undercover mailbox located in Miami-Dade County, Southern District of Florida ("UC PARCEL 1"). UC PARCEL 1 had been shipped via U.S. Postal Service (USPS) Priority Mail and bore the sender name "J.H.", with a return address of "8424 Santa Monica Blvd, Ste A, West Hollywood CA 90069." Upon opening UC PARCEL 1, investigators found a clear, heat-sealed plastic bag containing a white powdery substance consistent with heroin, concealed among miscellaneous household items. The heat-sealed package bore printed instructions stating: "Start with 0.01-0.03 first! Be safe until you know your tolerance for the product!!". The DEA laboratory confirmed the substance was 6.26 grams of fentanyl.

10. An Inspector with the United States Postal Inspection Service (USPIS) conducted a review of USPS business records related to UC PARCEL 1 and confirmed that the postage for UC PARCEL 1 was purchased through a third-party postage vendor that accepts cryptocurrency as a form of payment. Based on my training and experience, individuals conducting narcotics trafficking via USPS often utilize cryptocurrency as a method of payment for operational security purposes because it is difficult to attribute the payment to the true sender.

11. The USPIS Inspector was able to identify more than 500 parcels shipped since on or about March 19, 2025, that matched the description of UC PARCEL 1, including the same return address information. Specifically, these related parcels list the same sender's name and/or address as UC PARCEL 1 and bore postage that was purchased through the same third-party postage vendor that accepts cryptocurrency. In my training and experience, I know that individuals who use USPS to traffic narcotics often use the same or similar sender names/addresses, as it is difficult to create unique sender names for a large number of mailings.

12. Of the over 500 parcels, the induction point for one was identified. Specifically, USPS business records confirmed that this parcel was originally accepted in West Hollywood, California, at approximately 1246 hours on October 17, 2025. Video from this date and time was obtained and reviewed, showing a female entering the facility and holding a bag containing a single parcel. See photo below:




Surveillance photo from post office

The subject was observed wearing dark clothing, dark glasses, a hat, and gloves. In my training and experience, individuals handling parcels containing narcotics often wear gloves to avoid leaving fingerprints. The subject has the same physical characteristics as MARCOLINA.

**C. In December 2025: Distribution of approximately 7 grams of fentanyl**

13. On December 5, 2025, undercover investigators in Miami accessed the darknet marketplace known as DrugHub. Investigators located the vendor HotGirlzClub, who advertised multiple drug listings for sale. Investigators navigated the HotGirlzClub vendor page and located the listing for "Sweet Mama's China White Synthetic Potent AF". Investigators initiated an undercover purchase of approximately 6.2 grams of heroin from the vendor HotGirlzClub.

14. On December 31, 2025, investigators retrieved the parcel from the undercover mailbox located in Broward County, Southern District of Florida ("UC PARCEL 2"). UC PARCEL 2 had been shipped via USPS Priority Mail and bore the same information as UC PARCEL 1: sender name "J.H.", return address of "8424 Santa Monica Blvd, Ste A, West Hollywood CA 90069." Upon opening UC PARCEL 2, investigators found a clear, heat-sealed plastic bag containing a white powdery substance consistent with heroin, concealed among miscellaneous household items. The gross weight of the sealed package was 7.9 grams. The heat-sealed package bore printed instructions stating: "Start with 0.01-0.03 first! Be safe until you know your tolerance for the product!!". The DEA laboratory confirmed the substance was fentanyl.

**D. In May 2026: Distribution of approximately 8 grams of fentanyl and 5 grams of methamphetamine**

15. On May 15, 2026, undercover investigators in Miami accessed the darknet marketplace known as DrugHub. Investigators located the vendor HotGirlzClub, who advertised multiple drug listings for sale. Investigators navigated the HotGirlzClub vendor page and located the listing for "Sweet Mama's China White Synthetic Potent AF". Investigators initiated an

undercover purchase of approximately 6.2 grams from the vendor HotGirlzClub. Additionally, investigators initiated a purchase of a second listing for "All New Hot N Slutty Skittle Flavored Meth!" in the amount of 3.5 grams.

16. On June 1, 2026, investigators retrieved a parcel from the undercover mailbox located in Broward County, Southern District of Florida ("UC PARCEL 3"). UC PARCEL 3 had been shipped via USPS Priority Mail and bore similar sender information as UC PARCEL 1 and UC PARCEL 2: sender name "J.H.", return address of "137 N Larchmont Blvd, Los Angeles, CA 90004." Upon opening UC PARCEL 3, investigators found a clear, heat-sealed plastic bag containing a white powdery substance consistent with heroin, concealed among miscellaneous household items. The heat-sealed package bore printed instructions stating: "Start with 0.01-0.03 first! Be safe until you know your tolerance for the product!!". UC PARCEL 3 also contained a second clear, heat-sealed plastic bag containing a yellowish, crystalline substance. The gross weight of this sealed bag was 5.8 grams. Based on my training and experience, this substance is consistent with methamphetamine. The DEA lab confirmed the suspected heroin was in fact fentanyl and the yellow crystalline substance was methamphetamine.

17. USPS records confirmed the induction point for UC PARCEL 3 as a facility located at 5350 Wilshire Blvd, Los Angeles, CA 90036, on May 28, 2026. Video from this location was reviewed, and a female subject enters the facility at approximately 1213hrs. The subject walks directly to the lobby drop bin and was observed placing multiple items for processing. USPS records confirmed that postage for UC PARCEL 3 was purchased in conjunction with 15 other labels, and that all 16 parcels were scanned at the same facility within minutes of each other. The subject has black hair, is wearing black clothing and glasses, and can be seen wearing gloves. As noted above, I know that subjects engaged in narcotics trafficking will wear gloves in an effort to prevent leaving

any fingerprint evidence on parcels containing contraband. The subject has the same physical characteristics as MARCOLINA and the individual captured in the surveillance video discussed in paragraph 12 above. See photo below:



**E. AGUILAR and MARCOLINA are identified as beneficiaries of proceeds from the HotGirlzClub's account**

18. A Bitcoin address is a virtual location and identifier where users can send and receive cryptocurrency. Based on evidence obtained by the government in other investigations, the HotGirlzClub's account is associated with five cryptocurrency addresses, listed below:

a. 1Pfq3xokBTjd8VHRbyvK61FpbKDutB5jDs ("1Pfq3x…")
b. 1GwiKdsw1AWVUPreAuT3e9Epf2dceUQhi6 ("1GwiKd…")
c. 1HgdbzpW3zSmYRWTyoU7kEC4pp5rodSvUD ("1Hgdbzp…")
d. 1NgX34veDLayuLye4oQT8anCm3fHATmFqP ("1NgX34v…")
e. 1LKFBSiXKYo8ttNc7NRr6bgXS8QaXu3TrF ("1LKFBSi…")

19. Co-spend clustering is a technique used in Blockchain analysis, particularly on blockchains like Bitcoin, that identifies groups of cryptocurrency addresses likely controlled by the same entity or individual. This technique relies on the mechanics of how blockchain transactions work – utilizing the observation that when a user spends cryptocurrency in a single transaction, they often use unspent assets from multiple addresses as inputs to fund that transaction. When reviewing

the HotGirlzClub's account holder's cryptocurrency addresses, investigators noticed that each cryptocurrency address was associated with several Bitcoin addresses, listed below:

a. "1Pfq3x…" is clustered along with 39 other Bitcoin addresses.
b. "1GwiKd…" is clustered along with 5 other Bitcoin addresses.
c. "1Hgdbzp…" is clustered along with 392 other Bitcoin addresses.
d. "1NgX34v…" is clustered along with 64 other Bitcoin addresses.
e. "1LKFBSi…" is clustered along with 11 other Bitcoin addresses.

20. I reviewed the transactional activity of the five cryptocurrency addresses on the blockchain, and identified approximately 173 transactions between darknet marketplaces and the five cryptocurrency addresses associated with the HotGirlzClub vendor account from approximately September 17, 2020, to January 10, 2021, were proceeds from the sale of narcotics.

21. I traced the outgoing financial transactions from "1Pfq3x…" and "1GwiKd…", and recognized a number of transactions which met the definition of a peel chain,[1] with funds being "peeled off" to Bitcoin addresses belonging to BitPay Inc.[2]

22. Records obtained from BitPay Inc. show the peel chain transactions referenced ending in BitPay Inc. accounts belonging to two separate account holders – B.T. and K.A. The records provided by BitPay Inc. also included account activity, account registrant information and photos provided to BitPay by the account holders for verification purposes.

23. A review of the B.T. BitPay account provided the following facts:

a. Between June 2018 and May 2023, approximately 717 financial transactions took place worth a total value of approx. $410,434.

---

[1] A peel chain is a money laundering method where cryptocurrency is transferred through a series of addresses, with small amounts of funds "peeled off" at each step. While the bulk of the funds continue moving forward, smaller portions are sent to new wallets or cashed out, making the illicit transactions harder to trace.
[2] BitPay Inc. is a cryptocurrency payment service provider headquartered in Atlanta, Georgia that processes Bitcoin and other forms of cryptocurrency for merchants. Both merchants and shoppers can set up an account at BitPay. Shoppers can then send cryptocurrency to their BitPay account and use BitPay as an intermediary service to make purchases with registered merchants.

b. The account was fully funded through Bitcoin transactions. The account holder transferred the incoming Bitcoins into a BitPay Mastercard, a BitPay Visa, or Gift Cards sold by BitPay.

c. For verification purposes, the account holder provided BitPay with a California Driver's License ("DL") and a selfie photo. I searched state records in an effort to verify the authenticity of the DL provided to BitPay. I determined the license provided to BitPay by the account holder to be fraudulent, because the picture on the DL did not match the identity of the real DL license holder, B.T.

d. Law enforcement was able to conduct a search of publicly available information using the selfie photo and the fraudulent DL. The selfie photo matched the fraudulent DL photo, and identified Nicholas AGUILAR as the true BitPay account holder who transacted using illicit proceeds from the HotGirlzClub vendor account.


**Selfie photo provided to Bitpay**


**Instagram photo of AGUILAR**


**Fraudulent CA DMV photo**


**Booking photo of AGUILAR**

e. Records show AGUILAR has been previously arrested on various narcotics related charges. Booking photos were obtained from AGUILAR's arrests and matched the Bitpay selfie photo, fraudulent DL photo, and social media photos obtained.

f. Review of the BitPay account records show these funds were spent on various items such as transportation, food, hotels, clothing, and other personal items.

24. A review of the K.A. BitPay account provided the following facts:

a. Between January 2021 and June 2023, approximately 148 financial transactions took place worth a total value of approx. $210,681.

b. The account was fully funded through Bitcoin transactions. The account holder transferred the incoming Bitcoins into a BitPay Mastercard.

c. For verification purposes, the account holder provided BitPay with an Oklahoma Driver's License ("DL") and a selfie photo. I searched state records in an effort to verify the authenticity of the DL provided to BitPay. I determined the license provided to BitPay by the account holder to be fraudulent, because the picture on the DL did not match the identity of the real DL license holder, K.A. Law enforcement was able to conduct a search of publicly available information using the Bitpay selfie photo and the fraudulent DL. The selfie photo matched the fraudulent DL photo, and identified Jessica MARCOLINA as the true BitPay account holder who transacted using illicit proceeds from the HotGirlzClub vendor account.



**Selfie photo provided to Bitpay**



**Instagram photo of AGUILAR**



**Fraudulent CA DMV photo**

d. Review of the BitPay account records show these funds were spent on various items such as transportation, food, hotels, clothing, and other personal items.

25. Investigators reviewed the PGP public key associated with the HotGirlzClub vendor account on DrugHub and noted the same PGP public key was used for "HotGirlzClub" vendor profiles on other dark web marketplaces, to include Abacus Market, Archetype Market, and Incognito Market.

**F. AGUILAR used fraudulent information to rent a UPS Box for his drug trafficking business**

26. The USPIS Inspector reviewed USPS business records for online customer profiles and identified two (2) active accounts at the address listed on MARCOLINA's driver's license. The accounts are in the names Jessica L MARCOLINA and Jessica Lynn MARCOLINA, respectively,

and both list phone number ending in -1716 ("MARCOLINA's Phone") as the account holder's phone number.

27. Upon reviewing toll records for MARCOLINA's Phone, law enforcement identified phone number ending in -4823 ("AGUILAR's Phone"), believed to be used by AGUILAR as a consistent contact. The USPIS Inspector reviewed subscriber information for AGUILAR's Phone, which is in the name P.W. The subscriber information listed the correct Social Security number and date of birth for a real person named P.W., but it contained a home address of 8023 Beverly Blvd, Ste 1-1174, Los Angeles, CA 90048 ("UNIT 1-1174"), which is not P.W.'s true residence, according to USPS records. The subscriber address is a Commercial Mail Receiving Agency ("CMRA"); specifically, a UPS Store. A review of USPS records associated with UNIT 1-1174's CMRA application showed a California driver's license in the name of P.W., but with an altered image depicting AGUILAR. A review of P.W.'s true driver's license confirmed that the license used for the CMRA application was fraudulent.

28. A review of mailing records for UNIT 1-1174 confirmed that it received a collection of parcels bearing characteristics consistent with narcotics trafficking activity. Specifically, UNIT 1-1174 has received approximately 56 parcels from locations near the southwest border, which is known to law enforcement as a "source location" for narcotics parcels. On or about March 20, 2026, after seizing a parcel addressed to UNIT 1-1174, law enforcement searched it pursuant to a federal search warrant. *See* 2:26-mj-01614-MBK (CDCA). This parcel was addressed to K.K. Agents opened the parcel and found it contained a heat-sealed bag, that further containing a clear baggie with approximately 100 orange pills. The pills had "b 974" imprinted on one side and "30" imprinted on the other side, which are markings consistent with amphetamines. Based on my training and experience, I believe that these pills are counterfeit Adderall and the amount is a distribution

quantity. Forensic laboratory results are pending.

**G. Searches of MARCOLINA and AGUILAR's Residences**

29. On June 24, 2026, law enforcement executed search warrants at MARCOLINA's residence located at 1229 N. Sycamore Ave., Apt. #306, Los Angeles, CA 90038 (2:26-mj-03626 (CDCA)) and AGUILAR's residence located at 733 Lillian Way, Los Angeles, CA 90038 (2:26-mj-03627 (CDCA)).

30. Both MARCOLINA and AGUILAR were present at MARCOLINA's residence at the execution of the search warrant. A search of that location revealed the following items, amongst others: distribution quantities of suspected controlled substances, drug packaging materials (including heat sealed and black mylar bags), printed warning labels, USPS packaging materials, label maker, heat sealer, vacuum sealer, food processor with suspected narcotics residue, various electronics, fraudulent identifications, CMRA applications in fraudulent names, mail/paperwork in the names of stolen identities that were identified earlier in the investigation, and two parcels containing distribution quantities of suspected narcotics addressed to a CMRA in the name of a previously used stolen identity.

31. A search of AGUILAR's residence revealed that AGUILAR maintained a bedroom in a shared residence. Inside that bedroom, agents found the following items, amongst others: suspected controlled substances, two loaded handguns attached underneath his desk, a loaded rifle, various electronics, hardware cryptocurrency wallets, miscellaneous documents regarding the dark web/TOR browser/operational security, and approximately 10 fraudulent identification cards. In a shed in the backyard, agents also found a gun manufacturing system which was creating ghost guns, suppressors, and uppers/lowers. Below is a photo of all the firearms and accessories seized at the residence.



32. Of the suspected controlled substances found at MARCOLINA's residence, one substance appeared to be a yellowish crystalline substance. Based on my training and experience, this substance appears to be the same as the methamphetamine received in UC PARCEL 3. Additionally, a white powdery substance was also found in the residence. Based on my training and experience this appears to be consistent with the fentanyl received in UC PARCEL 3. Due to the danger of testing fentanyl in an uncontrolled environment, no field tests were performed on site.

33. Some of the packaging and the printed warning insert are the same style and wording as the items that were used to package the drugs in the UC parcels. See below photos.




Inside UC PARCEL 2




Found in MARCOLINA RESIDENCE

34. Additionally, as to the various fraudulent identity cards found during the search, one specific card links to the HotGirlzClub sales. There was a fraudulent California Driver's License in the name of J.H. found at AGUILAR's residence. This is the same name as the sender of the UC parcels. See photos below of one UC parcel label and the fraudulent identification card with AGUILAR's photo.



Label of UC PARCEL 2



Found in AGUILAR RESIDENCE

## CONCLUSION

35. Based on the foregoing facts, I respectfully submit that there is probable cause to support a criminal complaint against AGUILAR and MARCOLINA for violations of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 1956.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

SPECIAL AGENT STEPHAN GEORGE
INTERNAL REVENUE SERVICE - CI Badge #7982

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 24th day of June, 2026.

HONORABLE ENJOLIQUÉ A. LETT
UNITED STATES MAGISTRATE JUDGE